UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KELSEY O.[1],

                               Plaintiff,

    v.                                          3:17-CV-525 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
KATHRYN S. POLLACK, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 8).

## I.   PROCEDURAL HISTORY

Plaintiff protectively filed[2] an application for Supplemental Security Income

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

[2] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

("SSI") on July 1, 2014, alleging disability beginning February 14, 2006. (Administrative Transcript ("T") at 15, 161-66). Her application was denied initially on August 29, 2014. (T. 59-80). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 31, 2016. (T. 32-49). A supplemental hearing was held on November 2, 2016, to allow for vocational expert ("VE") testimony. (T. 50-58). On November 9, 2016, ALJ Elizabeth W. Koennecke found plaintiff was not disabled. (T. 12-31). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 18, 2017. (T. 1-7).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

3

conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III. <u>FACTS</u>

As of the date of the first administrative hearing on August 31, 2016, plaintiff was 26 years old. (T. 35).  She resided with her parents. (T. 447).  Plaintiff is a high

school graduate, who attended special education classes. (T. 35, 447). She had enrolled in a college program, but left after one day when she felt overwhelmed. (T. 447). She has never been employed, but has volunteered at her church to help watch two and three year olds during weekly services. (T. 36, 447). Plaintiff did not drive, and had difficulties riding in public transportation. (T. 39, 519).

Plaintiff suffered a right knee injury when she was a child, which still caused her pain. (T. 453). She testified that her knee occasionally gave out during physical activity, such as climbing stairs or lifting. (T. 45). Since the age of twelve, plaintiff had also suffered from frequent headaches and migraines. She testified that these headaches made her sensitive to light and interfered with her vision. (T. 43-44, 454).

Plaintiff reported that she had first received mental health treatment at the age of three, and had been attending weekly counseling sessions since 2013. (T. 447). She described a long history of anxiety that stemmed from childhood trauma, including her mother's cancer and being caught in a car fire when she was six years old. (T. 37, 511, 531). She frequently became stressed and anxious about social situations, and she testified that she experienced panic attacks that made it difficult to breathe or to think clearly. (T. 38).

The ALJ's decision and the parties' pleadings provide a detailed statement of the medical and other evidence of record. (T. 19-35). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. **THE ALJ'S DECISION**

The ALJ first found that plaintiff had not engaged in substantial gainful activity since her application date of July 1, 2014. (T. 17)  Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: headaches, a right knee impairment, and a mental impairment that had been variously characterized. (T. 17-19).  At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 19-20).

The ALJ found at step four of the analysis that plaintiff had no limitations for lifting, carrying, pushing, and pulling; could occasionally kneel and squat; and had no limitations for sitting, but could stand and walk for only two hours out of an eight hour workday. (T. 20).  The ALJ found that plaintiff retained the mental ability to understand and follow simple instructions and directions; to perform simple tasks independently; to maintain attention and concentration for simple tasks; to regularly attend to a routine and maintain a schedule; and to handle simple, repetitive work-related stress, that is, she could make occasional decisions directly related to the performance of simple tasks that did not require supervision or management of others. (*Id*.) The ALJ also found that plaintiff should avoid work requiring more complex interaction or joint effort with coworkers to achieve work goals, and should have no contact with the public. (*Id*.)  In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the

requirements of 20 C.F.R. 416.929" and Social Security Rulings ("SSR") 96-4p. (T. 20). Finally, the ALJ stated that she considered opinion evidence pursuant to 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id*.)

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible in light of the record evidence. (T. 21). The ALJ then determined that plaintiff had no past relevant work. (T. 24). Relying on the VE testimony, the ALJ found, at step five, that "considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (T. 25-26). Accordingly, the ALJ decided that plaintiff was not disabled from July 1, 2014 through the date of the ALJ's decision. (*Id*.)

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1. The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 13-27) (Dkt. No. 13).

2. The ALJ's step five determination was not supported by substantial evidence. (Pl.'s Br. at 27).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 7-23) (Dkt. No. 17). For the reasons stated below, the court concludes that the ALJ erred in evaluating the medical opinion

7

evidence and finds that her RFC determination was not supported by substantial evidence. As a result, the ALJ's analysis at step five and the ultimate finding that plaintiff was not disabled were tainted. Accordingly, the court orders a remand for further administrative proceedings to properly assess the medical evidence related to plaintiff's impairments in connection with the Commissioner's RFC determination.

## DISCUSSION

### VI. RFC EVALUATION/TREATING PHYSICIAN

#### A. Legal Standards

##### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make

conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### B. Application

Plaintiff contends that the ALJ improperly substituted her lay opinion of the medical evidence, and raises a challenge to the weight that the ALJ assigned to almost all of the medical opinion evidence. (Pl.'s Br. at 13-25). Without addressing every one

of plaintiff's contentions in detail, this court agrees that remand is appropriate, because the ALJ failed to offer substantial evidence that supported her determination in at least three of the functional areas addressed in the RFC. As a result, this court finds that remand for further administrative proceedings is necessary to properly assess the medical evidence and plaintiff's RFC. On remand, the Commissioner should properly address the totality of the medical opinion and other evidence, assess and articulate plaintiff's RFC with sufficient specificity, and present the evidence upon which the Commissioner relies to support the RFC determination.

### 1.     Time Off-Task/Absenteeism

The ALJ found that plaintiff retained the ability to regularly attend to a routine and maintain a schedule. (T. 20). In reaching this determination, the ALJ expressly relied on the opinion of consultative psychiatric examiner Dr. Sara Long, who examined plaintiff on August 19, 2014. (T. 21, 447-51). Dr. Long opined that plaintiff's attention, concentration, and recent and remote memory skills were all intact. (T. 22). Given the nature of Dr. Long's examination and the area of her expertise, she did not opine on any physical impairments that could impact petitioner's ability to attend to a routine or maintain a regular schedule.

Plaintiff's treating physician, Dr. Ian Stuppel, issued a September 2, 2016 medical opinion that addressed plaintiff's physical impairments. (T. 679-80). In that report, Dr. Stuppel opined on the impact that pain and fatigue would have on plaintiff's concentration, her ability to remain on task in the workplace, and her ability to meet a regular work schedule. (T. 679-80). He opined that plaintiff would be off-task more

than thirty-three percent of the workday, and would likely be absent more than four days per week. (T. 22, 679-80). The ALJ dismissed this opinion, because she considered it inconsistent with plaintiff's "wide range of daily activities," including her church volunteer work, her participation in a church choir, and her occasional care for her neighbor's animals, including goats and chickens. (T. 24, 568, 588, 647).

Plaintiff contends that the ALJ did not offer substantial evidence or sufficient "good reasons" for dismissing Dr. Stuppel's opinion. This court agrees. Dr. Stuppel's opinion appears premised on the impact from plaintiff's frequent migraines and other headaches.[3] (T. 680, 746). Although the ALJ found that plaintiff's headaches were a severe impairment, she concluded that "the record shows that [plaintiff's] headaches were responding well" to Naproxen, a prescription medication. (T. 23, 692). The ALJ also noted that plaintiff "denied experiencing any headaches" at some of her medical appointments, and that a recent neurology consultation was "normal." (T. 23, 504).

The ALJ's reliance on isolated treatment notes showing that plaintiff was not experiencing headaches at the time of the examination fails to recognize the episodic nature of the impairment. *See Groff v. Comm'r of Soc. Sec.*, No. 05-CV-54, 2008 WL 4104686, at *7 (N.D.N.Y. Sept. 3, 2008) ("[T]o place such emphasis on the absence of 'any specific evaluation or treatment' is . . . a misreckoning of the elusive task a doctor faces in diagnosing this impairment as there exists no objective clinical test which can corroborate the existence of migraines."). The ALJ's analysis also ignores the

---

[3] There is evidence in the record that plaintiff's irritable bowel syndrome may have also interfered with her ability to stay on task, but Dr. Stuppel did not mention this impairment in a January 8, 2017 letter to the Appeals Council clarifying his September 2016 opinion. (T. 746).

numerous instances in the record when plaintiff complained of debilitating headaches, which prompted the neurology consultation in June 2016. (T. 412, 503-505, 604, 610, 704). Moreover, while plaintiff reported some improvement with medication, she also told consultative examiner Dr. Magurno that when she experienced a migraine, she needed to take Naproxen and "lie down in a quiet place." (T. 453). She echoed this statement in her hearing testimony. (T. 43). The need to lie down in a quiet place would clearly impact plaintiff's ability to remain on-task during an eight-hour workday, but was not addressed by the ALJ in her consideration of Dr. Stuppel's opinion.

In addition, plaintiff's ability to perform certain activities outside the house is "a very weak basis" for the ALJ's rejection of the treating source opinion, because all of the activities described were performed at a rate other than eight hours a day, five days a week. *See Mallery v. Berryhill*, No. 3:17-CV-587 (DEP), 2018 WL 1033784, at *4 (N.D.N.Y. Feb. 22, 2018) (remanding where ALJ relied solely on plaintiff's daily activities to discount treating and consultative physician's opinions that migraines would force plaintiff to be off-task a significant portion of the workday). Plaintiff's church activities occurred approximately once or twice a week, and plaintiff testified that she had to miss them when she experienced a severe headache. (T. 36-37). Based on the record, it also appears that plaintiff only cared for her neighbor's animals on an intermittent basis. (T. 256, 647). Therefore, the ALJ failed to provide substantial evidence to explain the little weight assigned to Dr. Stuppel's treating physician opinion, and this error should be addressed on remand.

### 2.     Lifting and Carrying

As part of his September 2016 report, Dr. Stuppel also opined that plaintiff was limited to frequent (two-thirds of the workday) lifting of weights up to five pounds, and could only occasionally (up to one-third of the workday) lift items weighing greater than ten pounds. (T. 680). The ALJ assigned this opinion "little weight," because she found that it was not supported by the medical record. (T. 23). Instead, the ALJ determined that plaintiff had no restrictions on lifting and carrying. (T. 20).

The ALJ stated that she rejected Dr. Stuppel's opinion regarding plaintiff's ability to lift because he had previously "described [plaintiff's] musculoskeletal and neurological evaluations as normal." (T. 23, 713, 718). However, the records that the ALJ referenced does not address plaintiff's ability to lift or carry. In both reports, Dr. Stuppel merely described plaintiff's "gait and station" as "normal." (T. 713, 718). Moreover, the ALJ marshaled no other medical evidence to support her rejection of the treating source's opinion. For example, Dr. Justine Magurno, who performed a consultative examination of plaintiff on August 19, 2014, opined that plaintiff had "marked limitation" with regard to lifting. (T. 453-58). Dr. Magurno's report is the only other medical opinion to address the issue.[4]

The ALJ stated that she also relied on plaintiff's "broad range of daily activities" in determining that plaintiff had no restrictions on lifting or carrying. In particular, the

---

[4] Karen Demetros, a case worker from the New York State Department of Social Services, completed a function report on plaintiff's behalf. (T. 210-222). This report included plaintiff's self-assessment that she could lift up to ten pounds, but did not offer Ms. Demetros' professional opinion. (T. 215).

ALJ cited plaintiff's testimony that she "helped out" in a class for two and three year olds that lasted for forty-five minutes, once per week. (T. 36). In light of this testimony, the ALJ concluded that plaintiff "was capable of lifting and carrying young children." (T. 24).  However, the ALJ did not identify any record evidence that this volunteer work ever actually required plaintiff to lift and carry children, and this court cannot find any such evidence in its review of the record. (T. 626).  Likewise, plaintiff's statement that she had helped her mother clean out the apartment and put a lot of things "out to the curb" does not support the ALJ's rejection of the treating physician opinion.  The ALJ did not explain how plaintiff's ability to help with this chore was inconsistent with Dr. Stuppel's opinion that plaintiff could frequently lift up to five pounds, and could occasionally lift items greater than ten pounds.

In a January 8, 2017 letter provided to the Appeals Council, Dr. Stuppel explained that his conclusions with regard to lifting were based upon plaintiff's "obesity and associated chronic knee pain." (T. 746).  Although this explanation was not provided until after the ALJ's decision, it illustrates that the ALJ may have been able to clarify any gaps that she found in the medical record by contacting Dr. Stuppel for further explanation of his restrictive opinion.  In any case, the ALJ did not have substantial evidence at the time of her opinion to support her determination that plaintiff had no limitations with regard to lifting and carrying.  Accordingly, this court must conclude that the ALJ improperly substituted her lay opinion for the findings of plaintiff's treating physician, and the error should be addressed on remand.

14

### 3.  Avoidance of Lung Irritants

The ALJ also appears to have substituted her lay opinion for the expertise of consultant examiner, Dr. Magurno.  Dr. Magurno opined that plaintiff should avoid dust, fumes, and other known lung irritants due to her diagnosed asthma. (T. 45). During the consultative examination, plaintiff reported that she used a prescription inhaler, including twice in the past week. (T. 454).  There is also ample evidence in the record regarding plaintiff's history of asthma and reliance on a rescue inhaler. (T. 337, 339, 341, 469, 476, 479-91).

The only basis that ALJ identified for her dismissal of Dr. Magurno's opinion that plaintiff should avoid lung irritants were the "normal" consultative examination results of plaintiff's chest and lungs. (T. 22).  Thus, she appears to be basing her dismissal of the consultative examiner's opinion solely on her lay assessment of a single examination result.  Therefore, her determination is not supported by substantial evidence, and this error should also be addressed on remand.

## VII.  STEP FIVE DETERMINATION

### A.  Legal Standard

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  Although the ALJ is initially responsible for determining the claimant's capabilities based on all the

evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony.  *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996).  Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an RFC analysis supported by substantial facts, the hypothetical is proper.  *Id*. at 276-277.

### B. Analysis

As described above, the ALJ's RFC determination was not supported by substantial evidence.  As a result, the ALJ's analysis at step five, and the ultimate finding that plaintiff was not disabled, were tainted.  For example, the VE testified that there would be no occupations available for an individual who would be off task more than fifteen percent of the time, or who would have more than one unexcused absence per month. (T. 56-57).  Therefore, the ALJ's failure to properly consider the medical evidence regarding plaintiff's ability to maintain a regular schedule potentially impacted the VE's conclusions, and should be addressed on remand.

## VIII. NATURE OF REMAND

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the

evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). Even though the ALJ's decision is not supported by substantial evidence, this court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled." Thus, I cannot order a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order.

Dated:   June 28, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge